## Commonwealth ex rel. v. Burkland

*Nickolas Piazza* and *John L. Pipa, Jr.*, for relators.
*George O. Wagner*, and *Carl Rice*, for respondent.

TROUTMAN, J., March 31, 1950.—A writ of habeas corpus was issued on June 28, 1948, upon the relationship of Mary Burkland, to obtain the custody of her two sons, Charles Theodore Burkland and John Edwin Burkland, against Charles S. Burkland and Annie Burkland, the paternal grandparents. On May 9, 1949, an agreement was filed of record by the parties in which it was agreed that Suzann Souko and Frank Souko, the maternal grandparents of the child, be substituted as party petitioners and that John Burkland, the father of the child, be substituted as party defendant. At the time the writ was issued, Charles Theodore was nine years of age and John Edwin Burkland was seven years of age. Shortly after the issuance of the writ, John Edwin Burkland was stricken with poliomyelitis and died.

The mother and father were married February 4, 1938, and lived together in Danville, Montour County, Pa., during which time their two children were born.

The wife developed tuberculosis and was admitted to the Hamburg State Sanitarium for treatment in August 1944 and remained there until November 1946, at which time she left the sanitarium and returned and lived with her husband for several months in Danville. She then went to live with her parents, Suzann Souko and Frank Souko, in Berwick, Columbia County, Pa., where she is still residing. Upon the return of the wife from the sanitarium, the marital relationship became strained and the mother and father have not lived together since. Mrs. Burkland returned to the home of her parents.

The two children resided with their parents until the time of the mother's admission to the Hamburg Sanitarium, at which time the husband's sister came to live with him and kept house for him and the children from August 1944 until June 1945. The children spent the summer of 1945 with petitioners, their maternal grandparents, in Berwick, Pa. Then the children went to the home of the paternal grandparents in Riverside, Northumberland County, Pa. John Edwin Burkland continued to live with his paternal grandparents in Riverside until his death and Charles Theodore Burkland is still residing with them. The husband maintained the household during the time that his wife was in the sanitarium and until the death of John Edwin Burkland in August 1948, at which time he gave up his home and moved to the home of his parents in Riverside and from that time until the present, the father and son, Charles Theodore, are residing together at the home of the husband's parents.

The testimony shows that the father shares a bedroom with his son and comes in contact with him daily. Most of the day, the child has been under the care of his paternal grandmother. In the fall of 1949 the grandmother, Mrs. Burkland, was a hospital pa-

tient and apparently is not in good health. A brother and sister-in-law of the father moved into the residence at Riverside and the sister-in-law has been taking care of the household.

A careful review of the entire record discloses no immoral conduct on the part of any of the parties hereto or the mother and father of the minor child. Both the maternal grandparents and the paternal grandparents are highly respected law-abiding people and each of them maintains suitable homes and enjoys a normal home life. The testimony indicates that the home of petitioners is spacious, clean and well kept. If the boy were placed in the custody of the maternal grandparents, he would have a room of his own, a large lawn on which to play and have all modern conveniences and comforts. While the home of the paternal grandparents is less spacious, nevertheless, the record does not indicate that it is not a suitable place in which to rear children.

The difficulty in this case is the fact that the mother is a victim of tuberculosis and at times has been quite ill and has been bedfast since the summer of 1949. At the first hearing held in this case, it was necessary for her to be brought to the courthouse in an ambulance and testify from a cot. Later her depositions were taken at her home due to her condition. She has an active case of tuberculosis and her condition is such that her bedroom is in a downstairs room. She is unable to move about or to do any housework and is dependent upon the ministrations of her family. There is no question in the mind of this court that she dearly loves her child and nothing would please her more than to have her child live with her. If she were physically well, the court would not hesitate to place the child in her care.

On the part of petitioners, the maternal grandparents, testimony was offered showing that they

would be able to keep their grandson away from the sick mother; that they have been and will take every precaution to sterilize all things coming in contact with the sick mother; that the child need not enter the room of the patient and that every precaution would be taken so that the son would not come in contact with any germs of his mother's disease. The mother's doctor, called as a witness, testified that Mrs. Souko is extremely clean and follows all of the rules of hygiene in keeping the other members of the family away from the germs. The court is satisfied that the maternal grandparents are exceedingly particular about the care which their daughter receives and do take every precaution to prevent the germs from spreading to others.

At the close of the testimony the court made a temporary order in which the father, John Burkland, was directed to have his son visit his wife once each week for a period of about an hour under proper precautions. Meanwhile, at the suggestion of the court, a tuberculosis specialist was to be engaged to make an independent examination of conditions.

At a subsequent hearing Dr. John S. Packard, medical director of Devitt's Camp, who is a recognized authority on tuberculosis, was called as a witness and testified that an examination of sputum specimens of Mrs. Burkland indicated a very active case of tuberculosis and testified that it constituted an express hazard to other individuals coming in contact with the person and that a child of 10 years of age would be particularly susceptible to the germs. It was his opinion that no child should be in the patient's room nor handle or be in contact with articles that the patient handles and stated that the contacts between a parent and child should be extremely limited and suggested that a visit of an hour's duration twice a month would be the limit.

On cross-examination, the practices and precautions taken by Mr. and Mrs. Souko were related to Doctor Packard and he was asked if those rules would be observed whether the child could live in the home and the doctor replied that he thought he could but that such rules and regulations were very rarely so strictly observed.

Petitioners' testimony indicates that if they had the child they would use every precaution to avoid any direct contact between the mother and the child and that any visitation would be made from the doorway or on the other side of a window glass.

The mother is concerned about the welfare of her child and realizes that it would not be beneficial for him to come in frequent personal contact with her. She testified that she would be satisfied just knowing that the child was about even though he could not spend any time in her sick room. The court is satisfied that both the mother and other members of her family would be particularly concerned about the child's health and take every precaution to prevent him from contact with the mother's disease.

In cases involving the custody of children the cardinal consideration is ever the welfare of the child, which includes its physical, intellectual, moral and spiritual well being. To this the rights of parents and all other considerations are subordinate: Commonwealth ex rel. Kreiling v. Kreiling, 156 Pa. Superior Ct. 526, 530; Commonwealth ex rel. Firestone v. Firestone, 158 Pa. Superior Ct. 579; Commonwealth ex rel. Timmons v. Timmons, 161 Pa. Superior Ct. 174.

While we have every reason to rely upon the testimony and sincerity of the mother and the maternal grandparents as far as the welfare and protection of the minor child are concerned, yet, in the light of possible danger to which this child might be exposed, we

do not deem it to be for the best interests and welfare of the child to place him permanently in the home of his maternal grandparents. According to the testimony of Doctor Packard, a child of tender years is more susceptible to contracting the germs of tuberculosis and even with great precautions, there is a danger of infection.

Another serious factor which confronts the court is the fact that the proceedings before us actually involve a controversy between the maternal grandparents and the father of the child. The testimony indicates that the father takes a great interest in his child and looks after the child's welfare and there is no testimony which would lead the court to take the custody of the child away from his father and place the child in the custody of his maternal grandparents. While it is true that the mother lives with her parents, nevertheless, she is physically unable to personally care for the child. At the last hearing, the court privately interviewed the child and while it is not a matter of record, nevertheless, he expressed a preference to live with his father, basing his conclusion on the fact that while he loved his mother, she was unable to give him any personal attention, due to her illness.

After reviewing all of the testimony taken in this case, we deem it for the best interests and welfare of the child that custody remain in the father with arrangements for visits by the child to the home of his mother and maternal grandparents from time to time, until some changes may occur in the present situation. We believe that weekly visits of the child to the home of his mother and maternal grandparents should continue, at least until the closing of school, after which time the court will consider an increase in the number of visits. Any order which will be made at this time will be subject to changing conditions.

We are of the opinion that this minor child should have contacts with both branches of his family for there is no question in the court's mind but that petitioners in this case are very much concerned about his welfare. We feel that the risk of staying overnight in the home may be too great under present conditions and that the visits must be limited to daytime hours. Meanwhile, the child should be permitted to keep in frequent contact with his mother by telephone or other means of communication so that not only will the child continue his relationship with his mother and her family but the mother will be advised of the condition of her son. Due to the mother's condition the father should pay the expenses of the visits of the child to his mother as well as any telephone charges.

Due to sessions of school, and in order not to interfere with the child's education, the visit to the mother should be made on a Saturday. However, upon the closing of school for the summer and any change in the mother's present condition, the court will consider not only a change in the day of the visit but any possible increase in the number of visits. It is the considered judgment of this court that the child be reared in such a manner that he may be taught to respect and love both the maternal and paternal sides of his family and the only obstacle in full family relations is the regrettable illness of the mother. On the visits of the child to the mother's home, every precaution shall be taken to prevent him from coming in direct contact with any infection.

### Order

And now, to wit, March 31, 1950, it is hereby ordered, adjudged and decreed that the writ of habeas corpus heretofore issued be discharged and dismissed and the custody of the minor child, Charles Theodore Burkland, shall remain in the father, John Burkland, provided however, that the father, John Burkland, shall permit

Charles Theodore Burkland to visit relators, Suzann Souko and Frank Souko, and his mother, Mary Burkland, at their home in Berwick, Pa., on Saturday afternoons of each week, under proper precautions. Expenses of transportation between Riverside and Berwick and return shall be paid by respondent, John Burkland. The minor child, Charles Theodore Burkland, shall be permitted to make at least two telephone calls per week to his mother, Mary Burkland, at Berwick, Pa., without any interference. This order shall be subject to change following the close of school or any change in conditions.

Costs are to be paid by respondent, John Burkland, with the exception of petitioners' witness fees, which shall be paid by them.